UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| The Yanko Group LLC, Debtor. | Case No. |
| The Yanko Group LLC, Plaintiff, -against- Plon Realty Corp., Defendant. | Adv. Pro No. |

**COMPLAINT FOR DECLARATORY JUDGMENT FINDING AND DECLARING THAT THE SELLER CANNOT VALIDLY TERMINATE THE SALE CONTRACT AND THE DEBTOR'S TIME TO CLOSE THEREUNDER SHOULD BE EXTENDED; OR, ALTERNATIVELY, FOR RECOVERY OF THE DEPOSIT**

The plaintiff-debtor herein, The Yanko Group LLC (the "Debtor"), by and through its proposed attorneys, Goldberg Weprin Finkel Goldstein, LLP, as and for its Complaint against the defendant, Plon Realty Corp. (the "Seller" or the "Defendant"), respectfully alleges as follows:

## I. PRELIMINARY STATEMENT

1. The Debtor is seeking to enforce continuing contractual and statutory rights to purchase certain development real property located at 42 East 23rd Street, New York, New York (the "Property") for $12 million (including Deposits) pursuant to that certain contract of sale, dated as of April 29, 2026 (as amended, the "Contract").

2. Despite a failed closing on October 6, 2026, the Debtor is hereby challenging the Seller's declaration of default for the reasons set forth below. Indeed, the Debtor has elected to

commence this Chapter 11 proceeding to preserve all residual rights, claims and interest relating to the Contract through pursuit of this Adversary Proceeding, which is the cornerstone of the bankruptcy case.

## II. JURISDICTION AND VENUE

3. This adversary proceeding is brought pursuant to Bankruptcy Rule 7001(9) for a declaratory judgment and/or damages in the form of the recovery of the Deposit, as defined below.

4. The Bankruptcy Court has constitutional authority to enter a judgment by virtue of 28 U.S.C. §§ 157 (a) and (b), 1334 (b), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court.

5. This adversary proceeding constitutes a "core" proceeding within the meaning of 28 U.S.C. 157(b)(2)(A), (B), (E), (M), (N) and (O) in that the complaint seeks a declaration of property rights belonging to the Debtor's estate; affects the administration of the Debtor's estate; relates to allowance or disallowances of potential claims in bankruptcy; and otherwise involves the use and acquisition of property.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## III. PARTIES

7. The Debtor is a Delaware limited liability company which maintains offices in Great Neck, New York.

8. Upon information and belief, Defendant is a New York corporation, having offices at 349 Amsterdam Ave., New York, NY 10024.

## IV. BACKGROUND FACTS

9. The Debtor entered into the Contract with the Seller with the intention of acquiring the Property for redevelopment purposes. The Property is currently a vacant eight-story building.

10. After the Contract was signed, the scope of the project changed. At one point, the Debtor intended to build a residential tower at the location but subsequently reduced the scope of project to add only two additional floors for a total of ten floors. The redevelopment contemplated mainly construction of residential units (nine apartments) and a retail store on the ground level.

11. The Contract initially provided a closing date of 75 days from execution, which was subsequently extended by the parties pursuant to the First Amendment.

12. More particularly, by amendment dated August 7, 2026 (the "First Amendment"), the closing date was extended sixty days to October 6, 2026. In consideration of the extension, the down payment was increased from $600,000 to $900,000 (the "Deposit").

13. During the lead-up to the rescheduled closing date of October 6, 2026, the Debtor worked diligently to obtain construction and acquisition financing to consummate the sale and complete the intended redevelopment.

14. Prior to October 6, 2026, the Debtor received a term sheet from a *bona fide* third-party lender (Golden Bridge R2 LLC) to provide a mortgage loan in the principal sum of up $21,600,000, which was sufficient to enable the Debtor to close on the sale with the Seller.

15. The receipt of the *bona fide* term sheet was reported to the Seller in conjunction with a request to extend the closing date for a relatively short additional time to enable the new lender to ready itself of closing.

16. The Debtor primarily corresponded with the Seller's broker (BK REA) about the extension and coupled its request for a further extension with an offer to increase the Deposit by $100,000 for a total of $1,000,000.

17. The Seller's broker suggested to the Debtor that a further extension would be forthcoming, and the Debtor relied upon the positive feedback to reasonably believe that an extension of the closing date would be granted.

18. The Debtor heard nothing to the contrary until late in the day on October 5, 2026, when the Seller unreasonably declined to provide the anticipated additional extension and insisted on an immediate closing.

19. The lateness of the notice of Seller's decision made it impossible for the Debtor to close the next day.

20. Undeterred, the Seller thereafter wrongfully declared the Debtor in default under the Contract without just cause, and has attempted to forfeit the Debtor's Deposit.

21. In reality, the Seller's refusal to consent to a further extension was unreasonable despite any time of the essence covenants given the totality of the circumstances and the prior history in which an earlier extension was granted.

22. The Seller acted in bad faith in delaying its decision until the eleventh hour, particularly since the Seller itself was not fully ready, willing and able to close the transaction itself.

23. The Seller failed to make a complete tender of its own as is required as a matter of law in order to properly put the Debtor in default. It is well-settled that a valid tender requires not only the Seller's readiness and ability to perform, but also the Seller's actual production of all things required to be delivered under the Contract.

24. Pursuant to the Contract, the Seller's closing obligations were not limited to mere delivery of a deed and related documents, but included a number of other items as listed in Section 8.01 of the Contract, including:

(a) One (1) original Bargain and Sale Deed Without Covenant Against Grantor's Acts (the "Deed") in substantially the form attached hereto as Exhibit A, executed and acknowledged by Seller, and in recordable form, conveying to Purchaser the Real Property, Improvements, and Appurtenances, subject only to the Permitted Exceptions.

(b) One (1) original of each of the following transfer tax forms (collectively, the "Transfer Tax Documents"), completed and executed by Seller:
  (i) New York State Real Property Transfer Report (RP-5217NYC);
  (ii) New York State Combined Real Estate Transfer Tax Return, Credit Line Mortgage Certification, and Certification of Exemption from the Payment of Estimated Personal Income Tax for the Conveyance of Real Property Located in New York City (TP-584-NYC); and
  (iii) New York City Real Property Transfer Tax Return (NYC-RPT).

(c) Two (2) original Assignment and Assumption of Intangible Property (the "Assignment of Intangible Property") in substantially the form attached hereto as Exhibit B, each executed by Seller and assigning to Purchaser all Seller's right, title, and interest in the Intangible Property.

(d) One (1) original affidavit in substantially the form attached hereto as Exhibit C, executed by Seller and stating its taxpayer identification number for federal income tax purposes and affirming that Seller is not a foreign person within the meaning of Section 1445, et seq. of the Internal Revenue Code (the "FIRPTA Certificate").

(e) One (1) original Form 1099-S.

(f) All books, records, and other documents in Seller's possession, custody, or control that are used in the Property's maintenance and operation.

(g) All keys, key cards, and codes for entrance to the Property in Seller's possession and identification of the locks to which they correspond.

(h) A consent of the board of directors and/or shareholders of Seller authorizing the transaction contemplated hereby and the execution and delivery of the documents required to be executed and delivered hereunder.

(i) One (1) original customary title affidavit in a form reasonably acceptable to Seller and the Title Company.

(j) Two (2) original Closing Statements.

(k) All other documents reasonably necessary or otherwise required by the Escrow Agent or the Title Company to consummate the transactions contemplated by this Agreement.

25. There is no evidence that the title company, in fact, received all necessary deliverables from the Seller prior to or on October 6, 2026 as required by the Contract.

26. The Seller instead issued an opaque email that unspecified documents were delivered to title. This is insufficient to confirm that the Seller made a full and complete tender under the Contract as required. Without such proof, the Seller's declaration of a default against the Debtor was premature and invalid.

27. The Debtor served a Notice of Objection to the Seller's actions and has since filed a Chapter 11 petition to bring this challenge to the Seller's actions and ultimately invoke the provisions of 11 U.S.C. Section 108(b) providing for a sixty (60) day extension of the closing date as a matter of law.

28. Alternatively, the Debtor seeks recovery of damages in the form of return of the Deposit by reason of the Seller's improper efforts to terminate the Contract without just or proper cause.

**AS AND FOR A FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT**
**(The Contract Remains Enforceable by the Debtor)**

29. The Debtor repeats and realleges the allegations set forth above as though set forth at length herein.

30. The Contract is and remains a valid agreement since (i) the Seller acted unreasonably in not agreeing to an extension of the closing; and (ii) the Seller did not make a full and complete tender of all closing deliveries.

31. In view of these deficiencies, the Contract remains an executory contract within the meaning of Section 365 of the Bankruptcy Code. As such, the Contract can be assumed under Section 365 of the Bankruptcy Code based upon an extended closing date of at least sixty days pursuant to 11 U.S.C. §108(b).

32. A determination of the Debtor's continuing rights under the Contract creates a justiciable controversy between the parties.

33. In view of the foregoing, the Debtor is entitled to a judgment declaring and finding, *inter alia,* (i) the Contract was not properly terminated by the Seller prior to bankruptcy; (ii) the Debtor's rights to close thereunder remain enforceable; and (iii) the Debtor is entitled to a reasonable extension of the time to close consistent with 11 U.S.C. Section 108(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Damages Against the Seller)**

34. The Debtor repeats and realleges the allegations set forth above as though set forth at length herein.

35. The Seller breached the Contract by prematurely declaring a default without making a complete and full tender, and thereby forfeited the right to retain the Deposit.

36. Pursuant to Section 18.03 of the Contract, the Deposit serves as liquidated damages, such that the Debtor is entitled to the return of the Deposit based upon the Seller's own default and failure to make a complete tender, together with legal fees as the prevailing party pursuant to Section 20.12 of the Contract.

37. By reason of the foregoing, the Debtor is entitled to a judgment in the sum of $900,000 with accrued interest and reasonable attorney's fees.

WHEREFORE, the Debtor respectfully requests judgment as follows:

A. On its First Cause of Action, Declaratory Judgment finding and declaring that the Contract has not been terminated, the Debtor's rights thereunder to close on the sale remain fully enforceable, and granting the Debtor a reasonable extension of the closing date consistent with 11 U.S.C. Section 108(b); and

B. On its Second Cause of Action, a Judgment awarding liquidated damages in form of a return of the Deposit, together with reasonable attorney's fees and such further relief as the Court may deem just and proper.

Dated: New York, New York
October 14, 2026

GOLDBERG WEPRIN FINKEL
GOLDSTEIN, LLP
Attorneys for Plaintiff-Debtor
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700

By: /s/Kevin J. Nash, Esq.